IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| LARRY D. CASTLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:09-CV-021 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 11] will be granted, and plaintiff's motion for summary judgment [doc. 8] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff was born in 1964. He filed the present application - his thirteenth - claiming to be disabled as of September 27, 2005, by chronic obstructive pulmonary disease

("COPD"), anxiety, and pain in his neck, knee, and lower back. [Tr. 15, 66, 81].[1] The instant claim was denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in February 2007.

In April 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from COPD and a deformity of the right knee, impairments which are "severe" but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 19]. The ALJ found plaintiff to have the residual functional capacity ("RFC") for a range of medium exertion limited to only "occasional kneeling and crouching, and work not requiring exposure to fumes, vapors, dusts, and pulmonary irritants." [Tr. 19]. Plaintiff's subjective complaints were deemed "not totally credible." [Tr. 22]. Relying on vocational expert testimony, the ALJ determined that plaintiff remains able to perform a significant number of jobs existing in the regional and national economies. [Tr. 21]. Plaintiff was therefore found ineligible for SSI payments.

Plaintiff then sought review from the Commissioner's Appeals Council. On December 22, 2008, review was denied. [Tr. 4]. The ALJ's ruling therefore became the Commissioner's final decision. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).

---

[1] The court has set out plaintiff's background information in a previous memorandum opinion concerning a prior claim, and that information need not be repeated herein. *See Castle v. Astrue*, No. 2:07-CV-020, 2008 WL 56291 (E.D. Tenn. 2008).

II.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

3

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id*.

4

III.

*Analysis*

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, he contends that the ALJ improperly dismissed medical source opinions pertaining to his COPD and his mental health. All other issues have been waived because they were not specifically raised by plaintiff. *See, e.g., Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

> [W]e decline to formulate arguments on Hollon's behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.

*Id.* at 491.

A. COPD

Citing June 2005 pulmonary function testing, Dr. Joseph Smiddy wrote that month that plaintiff is "100% totally & permanently disabled by COPD & emphysema." [Tr. 143, 184]. In July 2005, Dr. Smiddy completed a Pulmonary RFC Questionnaire. [Tr. 259-62]. That severe assessment, which if credited would preclude all employment, predicted *inter alia* that plaintiff is incapable of sitting, standing, or lifting in the workplace *at all*. [Tr. 261]. Dr. Smiddy also opined that plaintiff is not a malingerer. [Tr. 260]. Citing later contemporaneous pulmonary function testing, Dr. Smiddy wrote in September 2005, "The patient feels that he is 100% totally and permanently disabled and I agreed." [Tr. 183].

5

Plaintiff contends that the ALJ erred by not adopting Dr. Smiddy's views, as the opinion of a treating physician is generally entitled to great weight when supported by sufficient clinical findings consistent with the evidence. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). The ALJ considered Dr. Smiddy's opinions but found them "very unrealistic[,] totally inconsistent with his own objective findings and the objective evidence of record . . . [and] of no probative value." [Tr. 19-20]. This court finds the ALJ's conclusion to be supported by substantial evidence.

Although plaintiff was noted to have given "questionable/fair effort" on a previous pulmonary functioning test in November 2004 [Tr. 199], he was described as having provided "good effort" on the June and September 2005 tests cited by Dr. Smiddy. [Tr. 196, 198]. Conversely, Dr. Karl Konrad performed a consultative examination in November 2005. Plaintiff's effort on pulmonary function testing that date was noted to be "submaximal in spite of encouragement" but the results were nonetheless improved over those previously considered by Dr. Smiddy. [Tr. 207-08]. Dr. Konrad recognized no physical limitations [Tr. 207], and Dr. James Millis subsequently completed a Physical RFC Assessment form predicting that plaintiff could work at the medium level of exertion with no concentrated exposure to respiratory irritants. [Tr. 230-34].

Faced with this contradictory evidence, the ALJ utilized Dr. Theron Blickenstaff as a medical expert witness at the administrative hearing. Acknowledging that plaintiff's testing effort had sometimes been described as "good," Dr. Blickenstaff still found

6

the June and September results to be "totally inconsistent" with Dr. Konrad's results. [Tr. 312]. Dr. Blickenstaff explained,

> The biggest issue raised in this record is about lung function. There are some discrepancies in the record regarding pulmonary function testing. Dr. Smitty [sic] obtained values on a pulmonary function testing in September 2005 that would be consistent with the listing level severity. However, two months later Dr. [Konrad] obtained values that are just slightly abnormal and substantially above listing level severity. Someone with severe pulmonary emphysema, which is apparently what Dr. Smitty [sic] believes the condition is, would not – it would not be possible for someone to show that much improvement in that – well, usually in any length of time. And it's – pulmonary function testing is extremely dependent on effort. But a variation of effort cannot result in an increase in pulmonary function. It can only decrease it. So it's – I think the correct interpretation of the overall results of pulmonary function testing in the record is that the Claimant has somewhat reduced pulmonary function from normal but not at listing level severity.

[Tr. 310]. Dr. Blickenstaff then offered an opinion as to plaintiff's RFC [Tr. 310], and that opinion was adopted by the ALJ. [Tr. 19, 316-17].

Having carefully reviewed the administrative record as a whole, the court concludes that Dr. Blickenstaff provided a reasonable explanation of the contradictory pulmonary evidence, and the ALJ's adoption of that medical expert's testimony in no way warrants reversal under substantial evidence review.

Further, to the extent that Dr. Smiddy cursorily opined that plaintiff "is 100% totally & permanently disabled by COPD & emphysema," the ALJ correctly noted [Tr. 19-20] that determination of ultimate issues such as disability are reserved to the Commissioner, not the physician. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Also, the ALJ correctly observed [Tr. 19-20, 313-14] that certain restrictions imposed by Dr. Smiddy

7

grossly exceed plaintiff's demonstrated activity level. For example, Dr. Smiddy opined that plaintiff is essentially incapable of sitting or standing *at all*. [Tr. 261]. However, plaintiff can shop at least weekly [Tr. 89], play video games daily [Tr. 90], perform light housework and laundry [Tr. 94], visit a neighbor [Tr. 86], and drive that neighbor to appointments and to the store. [Tr. 86]. Dr. Smiddy's opinion - that plaintiff is virtually bed-ridden and an invalid - is clearly inconsistent with plaintiff's demonstrated abilities.

In addition, the court notes that plaintiff has repeatedly denied illegal drug use to medical providers including Dr. Smiddy. [Tr. 142, 145, 150, 191, 267-68]. However, plaintiff was dismissed from the care of Centerpointe Medical Clinic in June 2006 due to his marijuana consumption. [Tr. 277]. At his administrative hearing, plaintiff testified that he was no longer seen by Centerpointe because he has no insurance, but then admitted that he had in fact been uninsured for several years - and the administrative record shows that plaintiff had in fact been treated by Centerpointe for a period of "several years" despite the alleged lack of insurance. [Tr. 298]. These discrepancies speak to the credibility of plaintiff's subjective complaints in general, and plaintiff's marijuana consumption specifically raises doubts as to his claims of "smothering" [Tr. 96] and disabling respiratory disease.

Lastly, the court notes that Dr. Smiddy has previously attributed plaintiff's respiratory problems to more than just COPD or emphysema. On February 3, 2004, Dr. Smiddy wrote a letter to plaintiff's dentist stating in material part,

8

> This patient has repeated pneumonia which is on the basis of bacteriemia in relation to a mouthful of broken and rotten teeth. The patient, because of his bad teeth, has associated malnutrition, weight loss, and poor immunity. . . . The patient has a severe restrictive ventilatory defect *as a result of* his chronic lung disease *and repeated pneumonias*. This patient will continue to have repeated pneumonias if his teeth are not fixed. The patient may have a fatal outcome if his teeth are not fixed. The patient does not smoke and does not have other apparent sources of pulmonary disease.
>
> It is in [sic] my opinion a medical emergency exists for this patient to obtain proper dental care . . . . If this is not done he will have repeated hospitalizations, repeated pneumonia, and is headed for a very bad outcome and a great deal of expense in care.

[Tr. 189] (emphasis added). As of the date of his administrative hearing, plaintiff still had not had his teeth repaired [Tr. 302], and his briefing to this court suggests no valid reason for his failure to follow that prescribed treatment. *See* 20 C.F.R. § 416.930(c). A claimant who does not follow "prescribed treatment without a good reason" is not disabled. *See* 20 C.F.R. § 416.930(b).

Therefore, for the reasons cited herein, substantial evidence supports the ALJ's rejection of Dr. Smiddy's opinion, particularly since that assessment is so grossly out of step with plaintiff's demonstrated activities. The ALJ nonetheless took plaintiff's respiratory difficulties into account by limiting his RFC to less than the full range of medium work with no exposure to respiratory irritants. That RFC is more restrictive than the opinions of Drs. Konrad and Millis. The court finds no error.

B. Mental Health

Next, plaintiff argues that the ALJ erred by not crediting a May 2006 opinion form completed by nurse Gervais Lucille Ashley. [Tr. 180-81]. Ms. Ashley is employed by Frontier Health, Inc. / Holston Counseling Center ("Frontier Health"). She saw plaintiff for quarterly "medication follow-up" appointments from August 2005 through November 2006. [Tr. 164-66, 264-66].

In her assessment form, Ms. Ashley opined that plaintiff has no functional ability in the following areas: relating to co-workers; dealing with the public; and remembering and carrying out detailed job instructions. [Tr. 180-81]. Nurse Ashley further predicted that plaintiff would be seriously limited, but not precluded, in nine other capacities. At the administrative hearing, vocational expert Donna Bardsley testified that no employment would be available for a claimant limited to the degree opined by Ms. Ashley. [Tr. 318].

In his decision, the ALJ summarized the generally mild findings present in plaintiff's mental health record [Tr. 18-19] but did not address nurse Ashley's opinion. The court finds any resulting error to be harmless in the present case. Harmless error may be found where the disregarded opinion was so patently deficient that no reasonable fact-finder could have credited it. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

In explaining her view that plaintiff has no ability to relate to coworkers or the public, Ms. Ashley wrote, "Client avoids crowds & has increased anxiety when around people. *Medications help in controlling anxiety to manageable level*." [Tr. 180] (emphasis

10

added). Other than a single report of increased anxiety in February 2006 [Tr. 164], plaintiff consistently told Ms. Ashley in 2005 and 2006 that his anxiety was controlled [Tr. 166, 265-66] and in November 2005 he denied suffering any anxiety at all. [Tr. 165]. If plaintiff's medications are keeping his anxiety at a manageable level as reported both by plaintiff and by Ms. Ashley, it is difficult to understand how that same anxiety would extinguish his ability to deal with others in the workplace.[2]

Also dubious is Ms. Ashley's view that plaintiff has no ability to remember or carry out complex job instructions. In support of that opinion, Ms. Ashley wrote only, "*Some difficulty with concentration per client report.*" [Tr. 181] (emphasis added). As noted above, plaintiff's self-reporting is suspect. The court additionally notes plaintiff's administrative hearing testimony that "I do good to sleep three hours a night. It's just – I don't know what it is. I just can't sleep. They even gave me sleeping pills and they don't even work." [Tr. 308]. That testimony sharply contrasts with plaintiff's statements to medical providers that he generally sleeps six to seven hours per night. [Tr. 164, 166-69, 264, 266]. Plaintiff's administrative hearing testimony that "I just stay nervous all the time" [Tr. 306] is similarly inconsistent with his reports of "controlled" (or "no") anxiety. In light of the credibility issues cited herein, nurse Ashley's reliance on a "client report" of "some

---

[2] Similar to nurse Ashley, in February 2006 nurse practitioner Libby Krell and another unidentified source wrote notes expressing their belief that plaintiff requires occasional government-provided assistance in cleaning his home due to "his medical problems," grief, and "his nerves." [Tr. 130-31]. Ironically, it was Ms. Krell who four months later dismissed plaintiff from the care of Centerpointe Medical Clinic due to his marijuana consumption. [Tr. 277]

11

difficulty" renders her severe opinion "patently deficient."

Further, Ms. Ashley's file shows that by May 2005 Dr. Zahid Hameed (also employed by Frontier Health) had labeled plaintiff's reports of pathological grief "questionable." [Tr. 167]. Most strikingly, by August 2005, Ms. Ashley had added a diagnosis of "malingering" to plaintiff's file [Tr. 166], and that diagnosis is repeated in all subsequent records of Ms. Ashley and her supervisor, senior psychiatrist Dr. Nuri Yong. [Tr. 164-65, 264-66].

Nurse Ashley, in sum, generated a severely restrictive vocational assessment based on the subjective reporting of a patient who she herself diagnosed as a malingerer. As a result, her assessment unquestionably is so patently deficient that no reasonable fact-finder could have credited it. Any error in the ALJ's failure to discuss (or adopt) nurse Ashley's opinion is deemed harmless. *Wilson*, 378 F.3d at 547.

By November 2006, plaintiff was living alone, was sleeping an average of eight to nine hours per night, had only "occasional depressed mood," and continued to report that his anti-anxiety medication was beneficial. [Tr. 264]. The administrative record as a whole substantially supports the conclusion that plaintiff's RFC is not significantly restricted by any psychological factors.

The Commissioner's final decision will be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge